# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

SHARON L. LANE,            )
                                  )
          **Plaintiff,**         )
                                  )      **Civil Action No. 3:10-0045**
    **v.**                            )      **Judge Nixon / Knowles**
                                  )
**MICHAEL J.  ASTRUE,**       )
**Commissioner of Social Security**   )
                                  )
          **Defendant.**       )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 14.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on February 26, 2007.  Docket No. 12,

Attachment ("TR"), TR 102-03,106-12.  Plaintiff alleged disability beginning January 25, 2002 (TR 102, 106), but later amended her onset date to December 31, 2007 (TR 23). Plaintiff alleged disability as a result of bipolar disorder with manic depression.  TR 133.  Plaintiff's applications were denied both initially (TR 45, 46) and upon reconsideration (TR 48, 50).  Plaintiff subsequently requested (TR 64) and received (TR 97) a hearing.  Plaintiff's hearing was conducted on July 20, 2009, by Administrative Law Judge ("ALJ") John R. Daughtry.  TR 20. Plaintiff and vocational expert ("VE"), Rebecca G. Williams, appeared and testified.  TR 20-43.

On August 26, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 6-19.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: mood disorder; history of alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels; however, she does have mental limitations, but retains the mental residual functional capacity to understand, remember and carry out simple directions; can maintain concentration and persistence

2

necessary to carry out simple tasks; can interact with the
general public with some difficulty; can interact with co-
workers and supervisors; and can adapt to gradual and
infrequent changes in the work environment.

6.      The claimant is capable of performing past relevant work
        as a snuff packer and machine operator. This work does not
        require the performance of work-related activities
        precluded by the claimant's residual functional capacity
        (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in
        the Social Security Act, from December 31, 2007, through
        the date of this decision (20 CFR 404.1520(f) and
        416.920(f)).

TR 11-18.

On September 15, 2009, Plaintiff timely filed a request for review of the hearing

decision.  TR 98.  On December 4, 2009, the Appeals Council issued a letter declining to review

the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the

Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42

U.S.C. §§ 405(g) and 1383(c)(3).  If the Commissioner's findings are supported by substantial

evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

## A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

------

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

5

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: 1) erred by not according proper weight to the opinion of Plaintiff's treating psychiatrist, Dr. James R. McFerrin, and in using Plaintiff's GAF scores to "undermine the limits stated by [him]"; 2) erred by "not having available for testimony a medical expert witness"; 3) failed to accord proper weight to the opinion of Plaintiff's treating physician, Dr. Avis D. Turner; 4) failed to properly evaluate the combined effect of Plaintiff's medically determined physical impairments, including obesity, sub conjunctiva hemorrhage of the right eye, gastroesophageal reflux with escophagitis, bronchitis, lumbar strain with a history of annular tear, mechanical back pain with radicular symptoms, hypertension, hiatal hernia, decreased range of motion in the left shoulder due to spasms, chronic abdominal pain left upper quadrant, and ankle pain; 5) erred in finding that Plaintiff was not disabled solely because she has a history of drug and alcohol abuse; 6) erred in not properly evaluating and assessing Plaintiff's credibility; and 7) erred in concluding that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to the Opinion of Plaintiff's Treating Psychiatrist and Consideration of GAF Scores

Plaintiff argues that the ALJ improperly rejected the April 23, 2009 medical source statement of her treating psychiatrist, Dr. James R. McFerrin. Docket No. 15. Plaintiff also contends that the ALJ erred by stating that Dr. McFerrin's medical source statement opinion was inconsistent with his treatment notes and her GAF scores, and by concluding that she had only mild to moderate limitations. *Id.*

Defendant responds that the ALJ properly evaluated the opinion of Dr. McFerrin. Docket No. 18. Defendant argues that, contrary to Plaintiff's assertions, the ALJ did not summarily reject Dr. McFerrin's opinion, but rather, rejected only the portion of the opinion that indicated that Plaintiff had "marked" limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and that the ALJ properly explained that Dr. McFerrin's opinion regarding Plaintiff's "marked" limitations was inconsistent with his treatment notes and with her GAF scores. *Id.* Defendant additionally argues that the ALJ did not rely solely upon GAF scores as Plaintiff contends, but rather, considered the totality of the evidence in determining that Plaintiff had mild to moderate limitations. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of

Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, Dr. McFerrin was Plaintiff's treating psychiatrist, a fact that would justify the ALJ's according greater weight to his opinion regarding Plaintiff's mental impairments than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. 20 C.F.R. § 416.927(d).

On April 23, 2009, Dr. McFerrin completed a medical source statement regarding Plaintiff's mental abilities to do work-related activities. TR 361-63. In that medical source statement, Dr. McFerrin opined that Plaintiff had no limitations in her abilities to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions. TR 361. Dr. McFerrin also opined that, because of Plaintiff's chronic and severe depression, she had moderate limitations in her abilities to understand, remember, and carry out complex job instructions; make judgments on complex work-related decisions; and act appropriately with co-workers, supervisors, and the public. TR 361-62. Dr. McFerrin additionally opined that Plaintiff had marked impairments in her ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id.* As support for his assessment, Dr. McFerrin noted Plaintiff's reported isolation at her home, as well as her reported "memory/concentration + focus problems." TR 362.

In August 2008 and October 2008, Dr. McFerrin saw Plaintiff for her general "Medication/Psychotherapy Visit." TR 394-98. On both occasions, Dr. McFerrin reported in his treatment notes that Plaintiff appeared oriented and exhibited "fair" and "adequate" grooming and hygiene. *Id.* He noted that Plaintiff denied any suicidal or homicidal thoughts or plans, but complained of a lack of energy and purpose. *Id.* He assessed Plaintiff's then-current GAF to be

55 on each occasion. *Id.*

On January 22, 2009, Dr. McFerrin again saw Plaintiff for her general "Medication/ Psychotherapy Visit." TR 381-82. He noted that while Plaintiff appeared oriented, exhibited fair grooming and hygiene, and continued to deny any suicidal or homicidal thoughts or plans, she reported being "more depressed" than she had been at her October 2008 visit. *Id.* He also noted Plaintiff's reports that she had been had been experiencing more crying spells and lacked energy and purpose. *Id.* He assessed Plaintiff's then-current GAF to be 50. *Id.*

Dr. McFerrin saw Plaintiff on April 23, 2009 for her general "Medication/ Psychotherapy Visit." TR 379-81. Dr. McFerrin, in his April 23, 2009 treatment notes (the same date that he completed the medical source statement discussed above), indicated that Plaintiff appeared oriented, and exhibited fair grooming and hygiene, limited insight, and fair judgment. TR 379-81. Dr. McFerrin also noted Plaintiff's reports that she felt "a little lower," that she attended Easter service, but went to bed afterward, and that she did not have suicidal or homicidal thoughts, but did experience occasional crying spells and lack of motivation. *Id.* Dr. McFerrin also noted Plaintiff's report that she does occasional housework, but has difficulty focusing on one thing at a time, and that she restarted her recovery meetings after being abstinent from alcohol and drugs for over a year. *Id.* Dr. McFerrin assessed Plaintiff as having a then-current GAF of 560, which appears to be a typographical error. *Id.*

Although Plaintiff contends that the ALJ committed reversible error because he rejected Dr. McFerrin's assessment of Plaintiff's mental abilities, the ALJ did not reject Dr. McFerrin's assessment of her mental abilities. In fact, ALJ explicitly accorded Dr. McFerrin's medical source statement "some weight insofar as it is consistent with the determined residual functional

capacity." TR 17. The ALJ discounted only the portion of Dr. McFerrin's statement that indicates a "marked limitation in adaptation." *Id.* The ALJ explained that he discounted Dr. McFerrin's finding that Plaintiff experienced a marked limitation in adaptation because it "is not consistent with Dr. McFerrin's treatment notes or with the GAF assessments," as those sources suggest only moderate limitations. *Id.*

Dr. McFerrin treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions. As has been noted, however, a portion of Dr. McFerrin's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are inconsistent with the evidence, the final decision regarding the weight to be given to the differing opinion lies with the Commissioner. 20 C.F.R. § 416.927(e)(2).

Dr. McFerrin's findings, recorded in treatment notes and reflected in GAF scores, are not consistent with his assessment that Plaintiff had "marked" limitations in the ability to respond appropriately to usual work situations and to changes in a routine work settings. TR 381-82, 395-96, 398. As such, the Regulations do not mandate that the ALJ accord the portion of Dr. McFerrin's evaluation that indicate "marked" limitations controlling weight. Accordingly, Plaintiff's argument fails.

**2. Availability of a Medical Expert Witness for Testimony**

Plaintiff contends that the ALJ should have obtained a medical expert in accordance with the Hearings, Appeals and Litigation Law Manual because there was a conflict in evidence between Dr. McFerrin's opinion and the opinions of Drs. Sherrod, Phay, and Kupstas. Docket No. 15. Defendant responds that the ALJ appropriately evaluated the conflicting evidence and that because there was no indication that the ALJ was confused by the medical evidence, there was no need for a medical expert. Docket No. 18.

HALLEX I-2-5-34A states that an ALJ may obtain medical expert (ME) opinions when "the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict." The provision is discretionary; the ALJ has the ultimate authority to determine whether or not an expert opinion is required to interpret conflicting or confusing medical evidence.

In the case at bar, the ALJ discussed the medical opinions of Drs. Kathryn Sherrod, Andrew Phay, Frank Kupstas, and James McFerrin in detail. TR 14-17.

In her April 18, 2007 consultative evaluation, Dr. Sherrod opined that Plaintiff's ability to understand, remember, and concentrate was adequate and that Plaintiff's social skills were mildly to moderately limited. TR 317-322.

Dr. Phay reviewed Plaintiff's medical evidence and determined on April 30, 2007 that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation for extended duration. TR 323-36.

In October 2007, Dr. Kupstas again reviewed Plaintiff's medical evidence and opined that Plaintiff had mild restriction in activities of daily living; moderate difficulties in maintaining

social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration.  TR 357-60.

As discussed above, on April 23, 2009, Dr. McFerrin opined that Plaintiff had moderate limitations in understanding, remembering, and carrying out complex job instructions; making judgments on complex work-related decisions; and acting appropriately with co-workers, supervisors, and the public.  TR 361-63.  Dr. McFerrin also stated that Plaintiff had marked impairments in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  *Id.*

While the ALJ found that Dr. McFerrin's opinion that Plaintiff had certain "marked" limitations was in conflict with assessments from Dr. Sherrod, Phay, and Kupstas that suggested only mild to moderate limitations, the ALJ conducted an in-depth evaluation of all sources in order to resolve the conflict.  TR 15-17.  The ALJ stated that the opinions of Drs. Sherrod and Kupstas were consistent with the evidence of the record and were therefore accorded significant weight.  *Id.*  As previously discussed in detail, portions of Dr. McFerrin's opinion were not consistent with medical evidence of the record and, therefore, were not assigned weight.  *Id.*

The ALJ properly evaluated all medical evidence in determining that Plaintiff was not disabled and expressed no confusion regarding the evidence.  TR 11-19.  The ALJ appropriately exercised discretion in accordance with HALLEX I-2-5-34A in determining that there was no need for a medical expert. Accordingly, Plaintiff's argument fails.

### 3. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff additionally maintains that the ALJ improperly rejected the July 2, 2009 medical source statement of her physician, Dr. Avis D. Turner, that suggested that Plaintiff suffered from

severe physical limitations. Docket No. 15. Defendant responds that the ALJ properly rejected the opinion of Dr. Turner because "medical records from Dr. Turner's treatment of Plaintiff fail to indicate any complaints of back pain, ankle pain" or any other impairments that would give rise to the extreme limitations that Dr. Turner suggested in her medical source statement. Docket No. 18.

As discussed in detail above, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.*

In her July 2, 2009 medical source statement, Dr. Turner opined that Plaintiff could lift and carry 10 pounds occasionally and could stand 40 minutes, walk 40 minutes, and sit 40 minutes in an 8 hour workday. TR 440-45. Additionally, she noted that Plaintiff could never reach, push or pull with her hands; was unable climb stairs, ramps, ladders, or scaffolds; and could not balance, stoop, kneel, crouch, or crawl. *Id.* Dr. Turner indicated that Plaintiff had mid back pain, decreased grip, bilateral pedal and ankle pain, and burning and tingling in the plantar surface consistent with neuropathy that was worse at night and with prolonged standing and sitting. *Id.* Dr. Turner stated that Plaintiff's impairments hads been present since 2006, well before Plaintiff's alleged onset date of December 31, 2007. TR 445. Medical records, however, do not document Plaintiff's back pain, ankle pain, or other impairments that would produce extreme limitations. TR 17.

The ALJ considered Dr. Turner's medical source statement in comparison with medical

records regarding Plaintiff's physical ailments. *Id.* The ALJ noted that Plaintiff's admitted daily activities of cooking, chores, and laundry contradict Dr. Turner's opined limitations and that "even the claimant's attorney conceded that there is not a lot of evidence to back up Dr. Turner's medical source statement." *Id.* The ALJ also stated that Dr. Turner likely "relied on subjective complaints when completing the medical source statement." *Id.* The ALJ determined that because medical records do not reference any complaints of back pain or ankle pain and do not support the extreme limitations suggested by Dr. Turner in her medical source statement, Dr. Turner's opinion is not credible. *Id.* The ALJ, therefore, gave no weight to Dr. Turner's opinion.

Because Dr. Turner's opinion is not supported by other substantial evidence in the record, the Regulations do not mandate that the ALJ accord weight to Dr.Turner's evaluation. Accordingly, Plaintiff's argument fails.

## 4.  Evaluation of the Combined  Effect of Physical Impairments

Plaintiff contends that the ALJ failed to properly evaluate the combined effect of her physical, medically determined impairments in assessing whether or not she was disabled. Docket No. 15. Specifically, Plaintiff argues that the ALJ failed to give proper weight to her obesity, sub conjunctiva hemorrhage of the right eye, gastroesophageal reflux with escophagitis, bronchitis, lumbar strain with a history of annular tear, mechanical back pain with radicular symptoms, hypertension, hiatial hernia, decreased range of motion of the left shoulder due to spasms, chronic abdominal pain in the left upper quadrant, and ankle pain. *Id.* Defendant responds that the ALJ properly considered all of Plaintiff's physical and mental impairments in determining that she was not disabled. Docket No. 18.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. Instead, Plaintiff simply maintains that the ALJ did not mention in the decision any physical impairment and, therefore, "performed only half of the analysis needed to properly dispose of this case." Docket Entry No. 15.

The ALJ, after evaluating all of the medical, vocational, and testimonial evidence, determined that Plaintiff did not have a physical or mental impairment or combination of impairments that met or equaled a listing. TR 12. In making this determination, the ALJ stated that he considered "all symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." TR 13. The ALJ specifically discussed the opinions of Dr. Nasreen Mallik, Dr. Kathryn Sherrod, Dr. Andrew Phay, Dr. Frank Kupstas, Dr. Avis Turner, Dr. James McFerrin, and Dr. Michael Propper and noted that in activities of daily living, Plaintiff had only "mild restrictions" and that in social functioning, Plaintiff had "moderate difficulties." TR 12-18. As discussed above regarding Dr. Turner's opinion, the ALJ stated that Plaintiff's medical records do not document any impairments that would produce extreme limitations. TR 17.

The rationale in the ALJ's decision specifically addresses the medical evidence, as well as Plaintiff's testimony and subjective claims of intensity, persistence, and limiting effects of symptoms associated with her medically determinable impairments, clearly indicating that these impairments were considered. *Id.* There is no evidence to support Plaintiff's claims that the ALJ did not consider all of her medically determinable impairments in determining whether she was disabled. To the contrary, it is clear from the ALJ's articulated rationale that the ALJ

considered the record as a whole in evaluating the combined effect of Plaintiff's impairments.

Moreover, the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing is supported by her own admission that her difficulties were primarily mental and that she was still able to cook, do chores and laundry, walk one mile, pay bills, watch television, read the newspaper and go to church. TR 18.

There is substantial evidence in the record to support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing; the ALJ's decision, therefore, must stand.

## 5. Alcoholism or Drug Abuse

Plaintiff argues that the ALJ avoided the requirements of SSR 82-60 by finding that she was not disabled solely because she has a history of alcohol and drug abuse. Docket No. 15. Plaintiff additionally states that the ALJ assumed the role of medical expert to reach the medical opinion that Plaintiff continued to consume alcohol "post disability onset date" and to ultimately "bolster" his conclusion that Plaintiff was not disabled. *Id.* Plaintiff maintains that this conclusion was not supported by substantial evidence and therefore must be reversed. *Id.*

Defendant responds that the ALJ properly considered all of Plaintiff's impairments, including her history of drug and alcohol use in determining that she was not disabled. Docket No. 18. Defendant also states that the ALJ did not assume the role of medical expert and that his notation to Plaintiff's November 2007 elevated AST, ALT, and gamma GT levels "was in recitation of the findings of Dr. Vidya Raj, who noted the elevated levels and opined that such elevation was most likely due to continued alcohol use." *Id.*

With regard to the evaluation of whether drug abuse or alcoholism is a contributing factor

material to the determination of disability, the Code of Federal Regulations states:

> (1)  The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling....

20 C.F.R. § 416.935(b).

In the case at bar, the ALJ's decision demonstrates that he carefully considered all of the medical, non-medical, and testimonial evidence in the determination that Plaintiff is not disabled.  *See* TR 9-19.  In making this determination, the ALJ specifically stated, *inter alia*, that "it is very difficult to determine mental limitations in light of ongoing substance abuse or dependance." TR 17.  The ALJ noted that in November 2007, Plaintiff "admitted that she continued to drink one or two beers twice a week; however, laboratory testing showed persistent elevations in AST, ALT and gamma GT" and that "staff psychiatrist, Nasreen Mallik, M.D., suspected that this was due to more alcohol consumption than the claimant had reported."  TR 14.  As can be seen, in suggesting that Plaintiff continued to consume alcohol as of November 2007, the ALJ did not assume the role of medical expert; rather, he relied on the expert opinion of psychiatrist, Nasreen Mallik. TR at 14.

Contrary to Plaintiff's assertion, the ALJ never suggested that Plaintiff continued to consume alcohol post disability onset because Plaintiff's amended onset date is recorded as December 31, 2007.  *Id.*  Plaintiff's treating psychiatrist's office notes, as well as her testimony, indicate that Plaintiff had reported being sober since 2008.  TR 29, 381, 389, 394-98.  The

medical, non-medical, and testimonial evidence thus demonstrate that Plaintiff was able to control the use of alcohol and drugs and, in light of her mental and physical limitations, was able to engage in substantial gainful activity. *Id.*

The ALJ's determination that Plaintiff was not disabled is supported by "substantial evidence" and is not solely based on her prior alcohol and drug use. As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," (*Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401)), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance" (*Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229)). The reviewing court must accept the ALJ's explicit findings and determinations unless the record, as a whole, is without substantial evidence to support the ALJ's determination. *Houston v. Secretary*, 736 F.2d 365 (6th Cir. 1984); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

As previously discussed, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that he carefully considered the Plaintiff's testimony and relevant portions of medical records. TR 29, 381, 389, 394-98. Because substantial evidence supports the ALJ's decision, that decision must stand.

**6.  Credibility of Subjective Complaints of Pain**

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not appropriately address her complaints of pain and resulting functional limitations. Docket No. 15. Defendant responds that the ALJ properly evaluated Plaintiff's credibility.

Docket No. 18.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other."").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of her medically determinable impairments are not credible. TR 13. Specifically, the ALJ articulated that Plaintiff, in her testimony, reported cooking and doing chores daily and that she only had problems getting along with others when her mood changed or when her medication did not work. TR 18. While Plaintiff claimed that her medications made her dizzy and drowsy, that she was unable to drive because of panic attacks, and that she was easily distracted, Plaintiff's testimony, as well as medical evidence provided in the record, suggests that Plaintiff was able to perform substantial gainful activity. TR 13.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 12-18. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's statements regarding the extent of her impairments are not credible and that she is capable of performing substantial gainful activity. TR 13. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

**7.  Residual Functional Capacity**

Plaintiff maintains that the ALJ erred in concluding that she had the residual functional capacity to perform a full range of work at all exertional levels. Docket No. 15. Defendant responds that Plaintiff bears the burden of demonstrating the existence of a medically severe impairment "which 'significantly limits' 'the ability to do basic work activities'"; the mere presence of a medical condition is not enough. Docket No. 18. Defendant contends that Plaintiff failed to carry her burden and that the ALJ properly considered all of Plaintiff's medically determinable impairments. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

As discussed in detail above, the record in the case at bar is replete with doctors' evaluations, medical assessments, and test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating all of the objective medical evidence of record and the claimant's level of activity, determined that Plaintiff had the Residual Functional Capacity to

perform a full range of work at all exertional levels.  TR 12.  The ALJ properly evaluated the evidence in reaching this Residual Functional Capacity determination, and the Regulations do not require more.

Moreover, the ALJ's determination that Plaintiff had the Residual Functional Capacity to perform a full range of work at all exertional levels is supported by Plaintiff's own admission that she "cooks daily . . . does all the inside chores and laundry . . . and only has problems getting along with others when her mood changes or when medication is not working."  TR 18. Because there is substantial evidence in the record to support the ALJ's Residual Functional Capacity determination, the ALJ's determination must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the administrative record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge